IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

GILBERT SOLLEK                                                                        PLAINTIFF

VS.                                                            CIVIL ACTION NO. 3:12cv115-DPJ-FKB

WESTPORT INSURANCE CORP.
and VANN LEONARD                                                                   DEFENDANTS

ORDER

This declaratory-judgment action is before the Court on cross motions for summary judgment filed by Plaintiff Gilbert Sollek [61] and Defendant Westport Insurance Corp. [63]. Sollek moves for summary judgment as to Westport's duty to defend and indemnify its insured and Sollek's attorney, Vann Leonard, in Sollek's state-court legal-malpractice suit. Westport counters that there is no coverage under the policy and, thus, neither a duty to defend nor to indemnify. The Court finds no coverage under the policy and therefore grants Westport's motion. Sollek's motion is denied.

I.      Facts and Procedural History

Plaintiff Gilbert Sollek hired Leonard in January 2006 to help him renegotiate a home-equity loan. Sollek later gave Leonard funds to pay down the loan, and it is alleged that Leonard initially made the payments though some were late. In May 2011, however, Leonard was incarcerated for embezzling funds from other clients and missed Sollek's monthly payment to the bank. Sollek then filed a May 31, 2011 lawsuit alleging legal malpractice for Leonard's failure "to make the May 2011 payment on the home equity line of credit and . . . to negotiate and pay off the remaining balance." Pl.'s Mot. [61] Ex. D, Compl. ¶ 11. The question in this case is

whether Defendant Westport received timely notice of the claim thereby triggering its duty to defend.

Leonard maintained a claims-made and reported professional liability policy with Westport. Westport issued this renewed policy to Leonard on April 8, 2010, for a term expiring one year later on April 8, 2011. During this period, Westport learned that Leonard had embezzled funds from various clients' which resulted in a bar grievance and several lawsuits against Leonard. Sollek's case had not yet come to light and was not referenced in the grievance or other suits.

From the beginning, Westport maintained that Leonard's activities were criminal or intentional and therefore fell under an exclusion in the policy. Nevertheless, Westport issued a December 21, 2010 reservation-of-rights letter that initially provided a defense in those other suits and allowed Leonard to select independent counsel as required by the Mississippi Supreme Court in *Moeller v. American Guaranty and Liability Co.*, 707 So. 2d 1062, 1070 (Miss. 1996). Leonard selected Joseph Holloman to defend him in the various lawsuits and bar grievance.

In May 2011—one month after the relevant policy period expired—Sollek learned that Leonard had been incarcerated on May 5. Sollek discussed the issue and the status of his funds with Holloman, who supposedly told Sollek that Leonard was willing to help recover the money. Sollek Dep. at 128–29. On May 31, 2011, Sollek filed his legal-malpractice lawsuit in the County Court of Rankin County, Mississippi, regarding the missed payment earlier that same month. Leonard was personally served in jail on June 2, 2011, and the complaint was faxed to Westport on June 15, 2011. According to Westport, the fax represents its first written notice of Sollek's claim.

Although Westport had defended Leonard under reservation of rights since December 2010, it ultimately declined coverage in a letter to Leonard and Holloman dated August 4, 2011. The letter based the decision on the criminal or intentional acts exclusion to the policy while reserving the right to deny coverage on other grounds. Aggrieved by that decision, Sollek sued Westport on January 3, 2012, in the Chancery Court of Madison County, Mississippi, seeking a declaratory judgment that Westport has a duty to defend and indemnify Leonard against Sollek's malpractice action. After removing the case to this Court, Westport filed its answer and a counterclaim seeking a declaration that Sollek's claim is not covered by the policy due to the criminal or intentional acts exclusion, or in the alternative for lack of written notice. Lack of notice is the only issue presented in these motions. Personal and subject-matter jurisdiction exist, and the Court is prepared to rule.

II.      Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine

issue for trial." *Id.* at 324 (citation and quotations omitted). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted).

III.     Analysis

   A.     Coverage

In this diversity case, the substantive law of Mississippi applies. *Barden Miss. Gaming Ltd. Liab. Corp. v. Great N. Ins. Co.*, 638 F.3d 476, 478 (5th Cir. 2011) (citation omitted). Under Mississippi law, an insurer's duty to defend "depends on the policy language and the allegations of the complaint." *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 443 (5th Cir. 2009) (citing *U.S. Fid. & Guar. Co. v. Omnibank*, 812 So. 2d 196, 200 (Miss. 2002)). And although a "liability insurance company has an absolute duty to defend a complaint which contains allegations covered by the language of the policy, . . . it has absolutely no duty to defend those claims which fall outside the coverage of the policy." *Farmland Mut. Ins. Co. v. Scruggs*, 886 So. 2d 714, 719 (Miss. 2004) (citing *Sennett v. U.S. Fid. & Guar. Co.*, 757 So. 2d 206, 212 (Miss. 2000)).

4

This case initially raises the following question of contract interpretation: Is written notice by a certain date a condition precedent to coverage? To answer that question, it is first important to differentiate the type of policy in issue. Leonard purchased a claims-made and reported policy rather than a claims-made policy. "A 'claims made' policy . . . protects the insured against claims made during the term of the policy, unlike an 'occurrence' policy, which protects the policy holder from liability for any act done while the policy is in effect." *Titan Indem. Co. v. Williams*, 743 So. 2d 1020, 1024 (Miss. Ct. App. 1999) (citation omitted). Although similar in many respects to a claims-made policy, a claims-made and reported policy differs in that it "also requires that the claim be reported to the insurance company within the policy period." *Jones v. Lexington Manor Nursing Ctr., L.L.C.*, 480 F. Supp. 2d 865, 868 (S.D. Miss. 2006) (citations and quotations omitted).

Though it appears the Mississippi Supreme Court has never interpreted a claims-made and reported policy, it is generally held that such policies require both the making and reporting of the claim within the specified period. "Both reports are 'considered essential to coverage' . . . ." *E. Tex. Med. Ctr. Reg'l Healthcare Sys. v. Lexington Ins. Co.*, 575 F.3d 520, 528 (5th Cir. 2009) (citation omitted) (applying Texas law); *see also Jones*, 480 F. Supp. 2d at 868–69 (collecting cases); 7 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 102:20 n.65 (3d ed. 2011).

The language in Leonard's policy comports with this understanding. Westport issued Leonard a renewed Lawyers Professional Liability Policy, with a policy period from April 8, 2010, to April 8, 2011. Policy at Declarations. On its declaration page, the policy purports to be a "CLAIMS-MADE AND REPORTED POLICY." *Id.* It goes on to explain that "COVERAGE

5

IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS WHICH ARE FIRST MADE AGAINST AN INSURED AND REPORTED TO THE COMPANY WHILE THE POLICY IS IN FORCE." *Id.* Further, section I.A. of the Insuring Agreements reads:

> The Company shall pay on behalf of any INSURED all LOSS in excess of the deductible for which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter . . . .

*Id.* § I.A. The policy also permits reporting of potential claims:

> If, during the current POLICY PERIOD, any INSURED first becomes aware of a POTENTIAL CLAIM and gives written notice of such POTENTIAL CLAIM to the Company during the current POLICY PERIOD, any CLAIMS subsequently made against any INSURED arising from the POTENTIAL CLAIM shall be considered to have been first made during the POLICY PERIOD the INSURED first became aware of a POTENTIAL CLAIM.

*Id.* § I.B. Section IV then expands on the reporting requirements:

> B.     REPORTING AND NOTICE
>
> As a condition precedent to coverage under this POLICY, if a CLAIM is made against any INSURED, or if any INSURED becomes aware of any CLAIM, the INSURED shall, as soon as practicable, but no later than sixty (60) days after the termination of the POLICY PERIOD, provide *written notice* of the CLAIM to the Company.  However, breach of this condition shall not result in a denial of coverage with respect to any INSURED who had no knowledge of the CLAIM. Nothing contained herein shall be construed as limiting the reporting requirements of Insuring Agreement 1.A.
>
> If, during the POLICY PERIOD, any INSURED first becomes aware of a POTENTIAL CLAIM and gives *written notice* of such POTENTIAL CLAIM to the Company during the POLICY PERIOD, any CLAIMS subsequently made against any INSURED arising from the POTENTIAL CLAIM shall be considered to have been made during the POLICY PERIOD the INSURED first became aware of the POTENTIAL CLAIM.
>
> The INSURED shall include within *any notice* of CLAIM or POTENTIAL CLAIM a description of the CLAIM or POTENTIAL CLAIM . . . .

> Notice to the Company under the POLICY shall be given [via the listed fax number, or via express or postal mail at the listed addresses.]
>
> . . . .
>
> Except as provided in Section IV. CONDITIONS, I., any notice shall be effective on the date of receipt by the Company . . . .

*Id.* § IV.B. (italics added).

        1.       The Policy Unambiguously Requires Written Notice

According to Sollek, the policy is ambiguous. Any ambiguity must be strictly construed against the drafter and in favor of the insured. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (citing *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001)). But "[t]he mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." *Turner v. Terry*, 799 So. 2d 25, 32 (Miss. 2001) (quoting *Cherry v. Anthony*, 501 So. 2d 416, 419 (Miss. 1987)). Instead, "[a]n ambiguity in an insurance policy exists when the policy can be interpreted to have two or more reasonable meanings." *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998) (citation omitted). "When the words of an insurance policy are plain and unambiguous, the Court will afford them their plain, ordinary meaning and will apply them as written." *Robichaux v. Nationwide Mut. Fire Ins. Co.*, 81 So. 3d 1030, 1036 (Miss. 2011) (citation omitted); *see also Ominbank*, 812 So. 2d at 198 ("Where a contract is clear and unambiguous, its meaning and effect are matters of law." (citations omitted)).

Here, Sollek finds ambiguity in section IV.B., which requires "written notice" in the first and second paragraphs, but then uses the phrase "any notice" in the third paragraph. Pl.'s Resp. [67] at 8–9; Pl.'s Reply [68] at 4. Sollek concludes that "any notice" would include non-written notice. But ambiguity exists only when the competing interpretation is "reasonable." *J & W Foods*, 723 So. 2d at 552. To make that determination, "[a] policy must be considered as a whole, with all relevant clauses together." *Architex Ass'n, Inc. v. Scottsdale Ins. Co.*, 27 So. 3d 1148, 1157 (Miss. 2010) (citation, quotations, and italics omitted). The first two paragraphs of section IV.B. clearly require "written notice," and the third paragraph merely outlines the content required when written notice is given. In other words, the words "any notice of CLAIM or POTENTIAL CLAIM" refers to the written notice addressed in the preceding paragraphs. Thus, the provisions can be read in harmony and there is no ambiguity in section IV.B. And to the extent any ambiguity could possibly follow, section IV.B. expressly states: "Nothing contained herein shall be construed as limiting the reporting requirements of Insuring Agreement 1.A.," where the policy again requires reporting "in writing." Because Sollek has not shown any ambiguity in the policy, "the Court will afford [the terms] their plain, ordinary meaning and will apply them as written." *Robichaux*, 81 So. 3d at 1036. Written notice was required.

2. Reporting Requirements

The policy provides coverage for "claims" or "potential claims" occurring within the policy period but establishes different reporting duties as to each. Sollek and Westport both spend time addressing the requirements for reporting "claims," but Sollek eventually argues that no "claim" was made during the policy period. Pl.'s Rebuttal [68] at 2. His position finds support in the policy, which defines "claim" as "a written demand made upon any INSURED for

8

LOSS, including, but not limited to, service of suit." Policy § II.A. Here, Sollek testified that he was not even aware of his claim until May 2011, one month after the policy period expired on April 8, 2011, and there is no evidence of a written demand before April 8, 2011. The policy provides coverage only for "CLAIMS first made . . . during the POLICY PERIOD." *Id*. § I.A. Thus, assuming Sollek is correct, there was never a "claim" during the policy period that would trigger coverage or the reporting requirements related to "claims."[1]

Although no "claim" occurred during the policy period, the policy did allow coverage for claims made after April 8, 2011, if the insured gave timely notice of a "potential claim." "Potential claims" include "any act, error, [or] omission . . . which might reasonably be expected to give rise to a CLAIM against the insured." Policy § II.K.1. Under the policy,

> [i]f, *during* the current POLICY PERIOD, any INSURED first becomes aware of a POTENTIAL CLAIM *and gives written notice* of such POTENTIAL CLAIM to the Company *during the current POLICY PERIOD*, any CLAIMS subsequently made against any INSURED arising from the POTENTIAL CLAIM shall be considered to have been first made during the POLICY PERIOD the INSURED first became aware of a POTENTIAL CLAIM.

*Id.* § I.B. (italics added).

This provision is significant in two key respects. First, it unambiguously requires notice of the potential claim "during the current POLICY PERIOD." *Id*. Second, that notice must be in writing. *Id*. Here, there is no record evidence that Leonard or anyone else provided any notice,

---

[1] Sollek made this observation while arguing that section IV.B. preserves coverage. Pl.'s Reply [68] at 2. Section IV.B. states that a breach by the insured in the reporting requirement "shall not result in a denial of coverage with respect to any INSURED who had no knowledge of the CLAIM." Policy § IV.B. According to Sollek, the claim first occurred June 2, 2011, when Leonard received the complaint, so Leonard can not be penalized for failing report. This argument ignores the fact that the policy presupposes a covered event, and "claims" made after April 8, 2011, are not covered unless they relate to a previously reported "potential claim" as discussed next.

9

of any sort, regarding Sollek's potential claim during the policy period ending April 8, 2011. In fact, Sollek suggests throughout his various memoranda that Westport learned about the claim in May or June 2011.[2]

Even if notice of a "claim" or "potential claim" after the policy period would suffice to trigger coverage, it must be timely and in writing. Policy §§ I.A., I.B., IV.B. And in addition to these provisions, section IV.B. provides specific reporting and notice requirements which operate as "a condition precedent to coverage under the policy." Policy § IV.B. For example, section IV.B. identifies the following items that must be reported:

> The INSURED shall include within any notice of CLAIM or POTENTIAL CLAIM a description of the CLAIM or POTENTIAL CLAIM, the alleged WRONGFUL ACT including date(s) it was committed, a summary of the facts upon which the CLAIM or POTENTIAL CLAIM is based, the alleged or potential damage that may result, the names of actual or potential claimants, the names of the INSURED(S) against whom the CLAIM was or may be made, and the date and circumstances by which the INSURED first became aware of the CLAIM or POTENTIAL CLAIM.

*Id.* Section IV.B. also expressly states that "[n]otice to the Company under the POLICY shall be given by confirmed facsimile, prepaid express courier, or U.S. Mail," and it then provides the facsimile number and physical addresses for the company along with the department that must receive the notice. *Id.* The section then concludes by noting that "any notice shall be effective on the date of receipt by the Company at either of the above addresses or facsimile number." *Id.*

---

[2]The record intimates that Leonard's May 2011 incarceration caused him to breach his duties to Sollek, and the underlying civil complaint cites the missed May 2011 payment as the basis of the suit. Although this point is not clear in the record, if the breach occurred due to Leonard's arrest in May, then it occurred after the policy period ended in April, and there was never even a "potential claim." Because the issue is not clear, however, the Court assumes some potential claims before April 8, 2011.

In this case, it is undisputed that no written notice was provided within the time allowed by the policy for either a "claim" or "potential claim." And there is no record evidence suggesting that anyone timely provided the information § IV.B. requires, to the parties it designates, in the manner it states. Sollek therefore fails to prove a condition precedent to coverage. *Id.*

As an alternative to showing timely written notice, Sollek argues that he substantially complied with the reporting requirements. He bases this argument in part on the contention that Holloman was Westport's agent and learned about Sollek's claim during his investigation. Pl.'s Resp. [67] at 9. As an initial matter, it seems unlikely that Holloman could be Westport's agent as he was hired by Leonard to serve as his independent *Moeller* counsel. *See Moeller*, 707 So. 2d at 1070 (holding that the "carrier should afford the insured ample opportunity to select his own independent counsel to look after his interest" (citations omitted)). Regardless, Sollek offers no authority for finding that substantial compliance applies with a claims-made and reported policy when the insurer learns of a potential claim but receives no report from the insured. Such a holding would conflict with the observations of one well-recognize commentator who notes that in claims-made and reported policies, "providing notice to the insurer is a contractual covenant of the insured." New Appleman on Insurance Law Library Edition § 20.01[7][b]. Thus, "[i]n those jurisdictions that have examined the distinction between claims-made and claims-made-and-reported policies, the courts have uniformly relieved the insurers from any requirement to prove prejudice under the latter form of coverage." *Id.* (citations omitted).

Even if authority existed to support a finding of substantial compliance based on an insurer's discovery of a claim, Sollek offers no record evidence showing Holloman obtained

11

knowledge of a "potential claim" before the April 8, 2011 deadline. Policy § I.B (providing that coverage exists when the "potential claim" is reported during the policy period). And it remains undisputed that as of the final day for reporting either a "claim" or "potential claim," Holloman had neither received nor provided written notice "to the Company" containing the specific information, delivered in the specified ways, that the policy requires. *See* Policy § IV.B. All of these items are "conditions precedent" to coverage, and none of them occurred. *Id.*[3]

In sum, Sollek's claim is not covered under Leonard's policy because when the policy period expired on April 8, 2011, no "claim" had been made and Westport had received no notice of a "potential claim." Plus, even assuming a timely "claim" or "potential claim," the first written notice to Westport occurred after all reporting deadlines passed. Because there is no coverage under the policy, there is no duty to defend or to indemnify Leonard against Sollek's state-court claims.

B. Waiver of the Reporting Requirement

Sollek alternatively argues that Westport waived or is estopped from relying on the lack of notice because it failed to list notice as a basis for denying coverage in its August 4, 2011 declination letter. Westport counters, without reply from Sollek, that waiver and estoppel cannot create coverage.

As recently noted by the Fifth Circuit Court of appeals, Mississippi

> follows the general rule that waiver or estoppel can have a field of operation only when the subject matter is within the terms of the policy, and they cannot operate

---

[3]Sollek initially requested a stay on this issue until the Court decided his Motion to Compel [50]. The Magistrate Judge denied that motion [70] concluding that no documents exist showing written notice before June 15, 2011. That ruling was not appealed under Federal Rule of Civil Procedure 72(a), and the present motion is therefore ripe for consideration.

> radically to change the terms of the policy so as to cover additional subject matter. Waiver or estoppel cannot operate so as to bring within the coverage of the policy property, or a loss, or a risk, which by the terms of the policy is expressly excepted or otherwise excluded.

*King v. Freedom Life Ins. Co. of Am.*, No. 11-60862, 2012 WL 3589803, at *2 (5th Cir. Aug. 21, 2012) (quoting *Emp'rs Fire Ins. Co. v. Speed*, 133 So. 2d 627, 629 (Miss. 1961)); *see Bituminous Cas. Corp. v. Buckley*, 348 F. App'x 23, 26 (5th Cir. 2009); *see also* 7 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 101:8 (3d ed. 2011) ("The majority rule is that an insured cannot use the waiver or estoppel doctrines to broaden coverage under the policy." (citations omitted)).

But as the Mississippi Court of Appeals noted in *Lynch v. Mississippi Farm Bureau Casualty Insurance Co.*, the doctrine is "often ignored." 880 So. 2d 1065, 1072 (Miss. Ct. App. 2004) (Southwick, J.) (citation omitted). And Professor Jeffrey Jackson reasons in his treatise on Mississippi insurance law that the rule may not apply in all contexts. As he explains:

> A distinction is sometimes drawn between forfeiture provisions, which can be waived by insurers, and the creation of coverage, which is beyond the reach of waiver or estoppel. The distinction can be stated as the difference between risk that has been "accepted" subject to provisions of forfeiture, and risk that has been "excepted" or excluded entirely from the policy.

Jeffrey Jackson, *Mississippi Insurance Law and Practice* § 7:5 (citing *St. Paul Fire & Marine Ins. Co. v. Vest Trans. Co.*, 666 F.2d 932, 948 (5th Cir. 1982); *Miss. Hosp. & Med. Serv. v. Lumpkin*, 229 So. 2d 573 (Miss. 1969)).

Professor Jackson's observation is based in part on *St. Paul Fire and Marine Insurance Co. v. Vest Transp. Co.*, where the Fifth Circuit explained, "It is the law of this Circuit that conditions going to coverage or scope of a policy of insurance, as distinguished from those furnishing a ground for forfeiture, may not be waived by implication from conduct or action."

666 F.2d at 948 (citation and quotations omitted). The Court then noted that Mississippi law is the same, citing *Employers Fire Insurance Co. v. Speed*. 133 So. 2d at 629–30 ("An insurer may be estopped by its conduct or knowledge from insisting on a forfeiture of a policy, but the coverage or restrictions on the coverage cannot be extended by the doctrines of waiver or estoppel."). Professor Jackson summarizes that the doctrine is "difficult to defend as well as to apply," but that it "is enforced in cases where the claimant seeks to change fundamentally the nature of the risk that the insurer has undertaken." Jackson, *supra*, § 7:5.

So the question becomes whether Sollek is attempting to employ waiver or estoppel to avoid forfeiture or conversely to extend coverage in a way that changes fundamentally the nature of the risk. Though Mississippi courts have not addressed the issue, the Court concludes that the reporting requirements in the Westport policy are akin to coverage-creating provisions that cannot be waived or overcome by estoppel. As noted, no "claim" ever occurred during the policy period, and assuming there was a "potential claim" during the policy period, it was not timely reported in writing or otherwise. Policy §§ I.A., IV.B. The policy expressly states that the reporting requirements are "conditions precedent" to coverage. Policy § IV.B. So coverage was never extended, and forfeiture is not the issue.

As noted, the making of the claim and timely reporting are "considered essential to coverage.'" *E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 575 F.3d at 528 (citation and quotations omitted). And "[s]uch a provision defines the scope of coverage by providing a certain date after which an insurer knows it is no longer liable under the policy." *Id*. (citation and punctuation

omitted).[4] Thus, allowing waiver or estoppel to nullify these requirements would fundamentally change the nature of the insurer's risk. It would likewise expand coverage beyond the scope of the bargain. Neither waiver nor estoppel create coverage in this context. *See Or. Schs. Activities Ass'n v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 279 F. App'x 494, 496 (9th Cir. 2008) ("Because notice under a claims-made-and-reported policy is the very act that triggers coverage . . . it is not a defense that can be waived, even if the insurer also asserts other defenses." (citations omitted)). Sollek has made no argument suggesting otherwise.[5]

IV.     Conclusion

The Court has considered all of the parties' arguments. Those not addressed would not change the result of this Order. For the foregoing reasons, the Court finds that Sollek's claim is not covered under the policy. Defendant's Motion for Summary Judgment [63] is granted and

---

[4]*See also* Franklin D. Cordell, 3 *New Appleman on Insurance Law Library Edition* § 20.01[7][b] ("Under claims-made-and-reported policies, the insured's duty to provide notice is part of the insuring agreement; that is, providing notice to the insurer is a contractual covenant of the insured and not, as with occurrence-based or claims-made coverage, a mere condition to coverage. Thus, in claims-made-and-reported policies, coverage is triggered only where the third-party claim is asserted against the policyholder during the policy period and the policyholder notifies the carrier of the claim during the policy period.").

[5]Even assuming waiver or estoppel could apply, their requirements have not been satisfied for the reasons stated in Westport's submissions. Looking to estoppel, if Sollek's reliance—and not Leonard's reliance—is the issue, then Sollek offers no evidence that he ever saw or heard about the August 4, 2011 declination letter. Likewise, there is no record evidence that he reasonably and detrimentally relied on the reason provided in the letter for declining coverage. As to waiver, Sollek offers no evidence of "an intentional surrender or relinquishment of a known and existing right." *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 212 (5th Cir. 2009) (citation and quotations omitted).

Plaintiff's Motion for Summary Judgment [61] is denied. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 2nd day of November, 2012.

                                                    s/ *Daniel P. Jordan III*
                                                    UNITED STATES DISTRICT JUDGE